IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| YAHYI SHIHEED, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GLR-20-0026 |
| LIONEL BURNETT, et al., | * | |
| Defendants. | * | |

\*\*\*

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendants Sgt. Adele Olakanye, Correctional Officer II Albert Osei-Osafo, Correctional Officer II Oluwasegun Fashae, Lt. Emmanuel Dabiri, and Correctional Officer II Sha'Cola Wright's[1] Motion to Dismiss, or in the Alternative, for Summary Judgment.[2] (ECF No. 18). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2021). For the reasons outlined below, the Court will grant Defendants' Motion, construed as one for summary judgment.

---

[1] The Clerk shall amend the docket to reflect the full and complete spelling of Defendants' names as provided here.

[2] Defendant Lionel Burnett was not served with the Complaint and as such, the Complaint against him is dismissed.

## I.   BACKGROUND

### A.   Shiheed's Allegations

Plaintiff Yahyi Shiheed is a state prison inmate presently housed at the North Branch Correctional Institution ("NBCI") in Cumberland, Maryland. (Compl. at 1, ECF No. 1). On March 26, 2017, while Shiheed was a pretrial detainee housed at Jessup Correctional Institution ("JCI"), he alleges that Defendants Barnett, Lyle, and Forbes "beat" him for no reason. (Id. at 3). Afterward, Shiheed was transported to the University of Maryland for treatment and received fifteen stitches to his left eye. (Id.).

Shiheed explains that before the attack, he held his cell door slot open to ask to talk to his attorney. (Id. at 4). He states that officers later said he had a weapon, but they were unable to find one in his cell. (Id.). Additionally, Shiheed alleges that he was beaten up on the tier and then dragged back into his cell where officers continued to beat him. (Id.).

In his Opposition, Shiheed further explains that he "had a mattress in the slot to prevent the threats of assault that happen to him." (Opp'n Mot. Resp. Defs.' Mot. Dismiss Alternative Mot. Summ. J. ["Opp'n"] at 4, ECF No. 20). He reiterates that no weapon was found his cell and denies attempting to assault an officer. (Id.). He also notes he was not charged with possessing a weapon or assaulting an officer after the incident. (Id.).

### B.   Defendants' Response

JCI staff conducted a Use of Force ("UOF") investigation after the incident. (UOF Summ. at 1, ECF No. 18-3). James Q. Harris, the Chief of Security, concluded that on March 26, 2017, Lyle was conducting security rounds when he saw Shiheed reach out of his cell with a homemade weapon. (Id. at 6). Lyle felt threatened and immediately notified

Brown, who was also on the wing conducting rounds. (Id.). When Brown arrived at Shiheed's cell door, Shiheed reached through the door slot with the weapon and attempted to assault Brown. (Id.). Brown advised Shaw of the incident and Shaw notified Wolfe. (Id.). Wolfe authorized a Tactical Response Team (the "TRT") for a planned use of force. (Id.).

A few hours later, Brown organized a TRT consisting of Dabiri, Olakanye, Fashae, Osei-Osafo, Wright, and Butler. (Id.). The officers assigned to the TRT were briefed on a planned use of force. (Id.). When Brown and the TRT reached Shiheed's cell, they noticed a mattress hanging partially outside of the cell through the cell door slot. (Id. at 6, 9–14). Shiheed refused Brown's orders to remove the mattress and place his hands through the slot to be handcuffed. (Id.). Brown tried to pull the mattress through the slot, but Shiheed did not allow him to. (Id. at 6–7, 9).

Brown called for the Control Center Officer to open the door to Shiheed's cell. (Id. at 7). When the door opened, Shiheed tried to leave "by forcefully pushing himself against Officer Dabiri[3] who was assigned as the (shield officer)." (Id.).[4] In an effort to gain control of Shiheed, Dabiri took him to the floor. (Id.). The TRT attempted to fully remove Shiheed from his cell and secure him, but could not do so because Shiheed had tied himself to his bunk. (Id. at 7, 9–14). Accordingly, the TRT took Shiheed back into the cell to detach the strings made from the bed sheet he had used to tie himself. (Id.). After he was untied, the

---

[3] In their use of force reports, Defendants Olakanye, Burnett, Fashae, and Osei-Osafo each describe Shiheed as attempting to exit the cell while "violently swinging with a closed fist." (UOF Summ. at 11–14).

[4] During the Inmate Grievance Office hearing, Shiheed testified that he "lost it" when his cell door was open and intentionally rushed into the TRT. (Md. Office Administrative Hr'gs Decision ["OAH Decision"] at 9, ECF No. 18-5).

TRT tried to place him in handcuffs and leg irons, but he resisted. (Id. at 7, 9–10). The TRT used a minimum amount of force including their hands, feet, and defensive holds to gain control of Shiheed. (Id. at 7).

Shiheed was taken to the JCI Infirmary immediately after the cell extraction and he was treated for a periocular contusion and eye laceration. (Medical Rs. at 3–7, ECF No. 18-4). He was transported to University of Maryland hospital for further treatment. (Id. at 9). His x-rays were negative, and a CT scan revealed no skull fractures or spinal injury. (Id.). Shiheed denied dizziness or vision problems and did not complain of pain. (Id.). He was treated with sutures for the eye laceration, given pain medication, and discharged back to JCI. (Id.). On April 5, 2017, the stiches were removed. (Id. at 17).

As a result of the incident, Shiheed was charged with violating five inmate rules including: engaging in a disruptive act; committing assault or battery on staff; disobeying an order; demonstrating disrespect or use vulgar language; and misusing, altering, tampering with, damaging, or destroying State property. (UOF Summ. at 28). A hearing was held regarding the inmate rule violations and Shiheed pleaded guilty. (Md. Office Administrative Hr'gs Decision ["OAH Decision"] at 5, ECF No. 18-5).

C.  **Procedural History**

On January 6, 2020,[5] Shiheed filed a Complaint against Olakanye, Osei-Osafo, Fashae, Dabiri, Wright and Burnett and alleges that Defendants used excessive force. (ECF

---

[5] Shiheed initially filed his Complaint on January 6, 2019. He then refiled the Complaint on January 6, 2020.

No. 1). He seeks monetary damages. (Id. at 5). On April 14, 2021, Shiheed filed a "Motion for Request" asking that the case "be granted" because Burnett retired. (ECF No. 14).[6]

On June 7, 2021, Defendants Olakanye, Osei-Osafo, Fashae, Dabiri, and Wright filed a Motion to Dismiss or, in the Alternative, for Summary Judgment. (ECF No. 18). Shiheed filed an Opposition on June 21, 2021. (ECF No. 20).[7] Defendants did not file a Reply.

## II.  DISCUSSION

**A.  Conversion**

Defendants style their Motion as a motion to dismiss under Rule 12(b)(6) or, in the alternative, for summary judgment under Rule 56. "A motion styled in this manner implicates the Court's discretion under Rule 12(d)." Pevia v. Hogan, 443 F.Supp.3d 612, 625 (D.Md. 2020). This Rule provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d). The Court "has 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" Wells-Bey v. Kopp, No. ELH-12-2319, 2013 WL 1700927, at *5 (D.Md. Apr. 16, 2013) (quoting 5C Wright & Miller, Federal Practice & Procedure § 1366, at 159 (3d ed. 2004, 2012 Supp.)).

---

[6] The Court will deny the Motion.
[7] Lastly, counsel Stephanie Lane-Weber moves to strike her appearance on behalf of Defendants Olakanye, Osei-Osafo, Fashae, Dabiri, and Wright. (ECF No. 22). The Court will grant the Motion.

The United States Court of Appeals for the Fourth Circuit has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion: notice and a reasonable opportunity for discovery. See Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt., 721 F.3d 264, 281 (4th Cir. 2013). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur. See Moret v. Harvey, 381 F.Supp.2d 458, 464 (D.Md. 2005). The Court "does not have an obligation to notify parties of the obvious." Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 261 (4th Cir. 1998).

Ordinarily, summary judgment is inappropriate when "the parties have not had an opportunity for reasonable discovery." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011). Yet, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002) (quoting Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996)). To raise satisfactorily the issue that more discovery is needed, the non-movant must typically file an affidavit or declaration under Rule 56(d), explaining the "specified reasons" why "it cannot present facts essential to justify its opposition." Fed.R.Civ.P. 56(d). A Rule 56(d) affidavit is inadequate if it simply demands "discovery for the sake of discovery." Hamilton v. Mayor of Balt., 807 F.Supp.2d 331, 342 (D.Md. 2011) (citation omitted). A Rule 56(d) request for discovery is properly denied when "the additional

6

evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." Ingle ex rel. Estate of Ingle v. Yelton, 439 F.3d 191, 195 (4th Cir. 2006) (quoting Strag v. Bd. of Trs., Craven Cmty. Coll., 55 F.3d 943, 953 (4th Cir. 1995)).

The Fourth Circuit has warned that it "'place[s] great weight on the Rule 56[d] affidavit' and that 'a reference to Rule 56[d] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for a Rule 56[d] affidavit.'" Harrods, 302 F.3d at 244 (quoting Evans, 80 F.3d at 961). Failing to file a Rule 56(d) affidavit "is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." Id. (quoting Evans, 80 F.3d at 961). Nevertheless, the Fourth Circuit has indicated that there are some limited instances in which summary judgment may be premature notwithstanding the non-movants' failure to file a Rule 56(d) affidavit. See id. A court may excuse the failure to file a Rule 56(d) affidavit when "fact-intensive issues, such as intent, are involved" and the nonmovant's objections to deciding summary judgment without discovery "serve[ ] as the functional equivalent of an affidavit." Id. at 245 (quoting First Chi. Int'l v. United Exch. Co., 836 F.2d 1375, 1380–81 (D.C. Cir. 1988)).

Here, the Court concludes that both requirements for conversion are satisfied. Shiheed was on notice that the Court might resolve Defendants' Motions under Rule 56 because Defendants styled their Motion as a motion in the alternative for summary judgment and presented extra-pleading material for the Court's consideration. See Moret, 381 F.Supp.2d at 464. In addition, the Clerk informed Shiheed about the Motion and his

7

need to file an opposition. (See Rule 12/56 Letter, ECF No. 19). Shiheed filed an Opposition, as well as a declaration in support of his claim, but did not include a request for more time to conduct further discovery. Thus, the Court will treat Defendants' Motions as motions for summary judgment and will consider documents outside of Shiheed's Complaint in resolving the Motions.

**B.** **Standard of Review**

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Ricci v. DeStefano, 557 U.S. 557, 586 (2009); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence," Fed.R.Civ.P. 56(c)(2), and supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence," Fed.R.Civ.P. 56(c)(4).

Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing there is genuine dispute of material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).

The nonmovant cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." Othentec Ltd. v. Phelan, 526 F.3d 135, 141 (4th Cir. 2008) (quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) ("The existence of an alleged factual dispute between the parties will not defeat a properly supported motion for summary judgment, unless the disputed fact is one that might affect the outcome of the litigation."). Whether a fact is considered to be "material" is determined by the substantive law. Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001). A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. If the nonmovant has failed to make a sufficient showing on an essential element of her case where she has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986) (quoting Fed.R.Civ.P. 56(c)).

**C.   Analysis**

The Supreme Court held in Kingsley v. Hendrickson that "the appropriate standard for a pretrial detainee's excessive force claim is solely an objective one." 576 U.S. 389,

9

398 (2015).[8] It is enough that a pretrial detainee show "that the force purposely or knowingly used against him was objectively unreasonable," id. at 396–97, "regardless of an officer's state of mind," Dilworth v. Adams, 841 F.3d 246, 255 (4th Cir. 2016) (citing Kingsley, 576 U.S. at 395). Thus, in the instant case, Shiheed is not required to offer evidence of the officers' states of mind during the use of force against him. Under Kingsley, this Court must consider whether under the "facts and circumstances" of this particular case, from the "perspective of a reasonable officer on the scene," the force used against Plaintiff was objectively excessive. Id. at 397 (citing Graham v. Connor, 490 U.S. 386, 396 (1989)). Under the Eighth Amendment, this Court inquires if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6 (1992) (quoting Whitley v. Albers, 475 U.S. 312, 320–21 (1986)). Further, in an Eighth Amendment claim, a defendant may not avoid liability simply because the prisoner had the good fortune to escape serious harm where force is applied maliciously and sadistically. Wilkins v. Gaddy, 559 U.S. 34, 38 (2010).

Here, Shiheed has failed to adequately refute the facts and arguments presented in Defendants' Motion. He has not provided or forecast evidence to support his claim that the force used against him was objectively unreasonable. While Shiheed denies assaulting staff and claims that Defendants continued to kick and hit him after officers subdued him in his cell, Shiheed's affidavit in support of his Opposition does not include those statements. (Opp'n at 13). Shiheed primarily relies on unsupported legal conclusions, such as his

---

[8] Shiheed alleges that he was a pretrial detainee at the time of the events recounted in his Complaint. (See Compl. at 3). Defendants do not challenge this assertion.

10

assertion that Defendants were "involved [in an Eighth] Amendment violation of use of force excessively on Plaintiff Yahyi Shiheed." (Id.).

The Court finds that there remains no genuine issue of material fact as to whether the use of force was reasonable. The record evidence demonstrates that Shiheed held his cell slot open, threatened officers, refused orders to remove the mattress from the door slot and to be handcuffed, charged out of the cell into the TRT, and tied himself to his bunk so that he could not be removed from his cell. Defendants gave Shiheed verbal commands to comply and then used the requisite amount of force to restrain him.

Further, Shiheed has failed to counter the events described in the UOF Summary. On the contrary, the evidence demonstrates that Shiheed pleaded guilty to the inmate rule infractions arising from the cell extraction and admitted during his IGO hearing that he "lost it" when his cell door was opened and intentionally rushed into the TRT members (OAH Decision at 9). Moreover, Shiheed's injuries from the encounter—which were limited to a periocular contusion and eye laceration—support the Court's conclusion that Defendants used only the force necessary to control Shiheed. The injuries are not consistent with Shiheed's allegation that several officers beat, punched, and kicked him.

As such, the evidence before the Court demonstrates that Defendants acted in a constitutionally permissible manner to gain Shiheed's compliance and maintain institutional security when he repeatedly refused to comply with staff directives. Thus, Defendants are entitled to summary judgment as to Shiheed's excessive force claims.

### III. CONCLUSION

For the foregoing reasons, the Court will grant Defendants Olakanye, Osei-Osafo, Fashae, Dabiri, and Wright's Motion to Dismiss, or in the Alternative, for Summary Judgment (ECF No. 18). A separate Order follows.[9]

Entered this 28th day of March, 2022.

/s/
George L. Russell, III
United States District Judge

---

[9] In light of the Court's decision, it need not address Defendants' additional defenses.